# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 17-1899V
Filed: September 6, 2024

| | |
|---|---|
| CARLA DURHAM,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Special Master Horner |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.
*Camille Michelle Collett*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

  On December 7, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] (the "Vaccine Act"). (ECF No. 1.) Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"). (*Id.*) After petitioner had filed four expert reports by orthopedic surgeon Uma Srikumaran, M.D., a dismissal decision was issued on April 7, 2023, finding petitioner had neither demonstrated a Table SIRVA nor a shoulder injury caused-in-fact by her vaccination. (ECF No. 76.)

  On November 15, 2023, petitioner filed a final motion for attorneys' fees and costs. (ECF No. 59.) Petitioner requests a total of $79,579.50 for attorneys' fees and

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

1

costs, including $60,346.70 for attorneys' fees and $19,232.80 for costs. (*Id.* at 2.) Initially, respondent filed a response to petitioner's motion on November 21, 2023. (ECF No. 80.) Respondent stated that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by petitioner for an award of attorneys' fees and costs," but explained that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." (*Id.* at 1-2.) Respondent requested that the court exercise its discretion and determine a reasonable award for attorneys' fees and costs. (*Id.* at 3.) Petitioner then filed a reply noting respondent's response and reiterating the view that the requested fees and costs are reasonably and appropriately documented. (ECF No. 81.)

However, on January 22, 2024, respondent filed a sur-reply, raising for the first time that the hourly rate requested for petitioner's orthopedic expert, Dr. Srikumaran, is higher than what experts in the program are typically awarded. (ECF No. 82.) Respondent acknowledged that Dr. Srikumaran's rate had previously been adjudicated in *Aycock v. Secretary of Health & Human Services*, No. 19-235V, 2023 WL 8869423 (Fed. Cl. Spec. Mstr. Nov. 8, 2023), but urged a case-by-case determination. (*Id.* at 3-4.) I then directed petitioner to file a reply to respondent's filing. (Non-PDF Scheduling Order, filed Feb. 14, 2024.) On March 4, 2024, petitioner filed her reply accompanied by six exhibits that provided evidence regarding Dr. Srikumaran's rate similar to what had been presented in *Aycock*. (ECF Nos. 84-85; Exs. 33-39.) Petitioner argued that Dr. Srikumaran's requested rate of $1,000.00 per hour[3] should be awarded and also that respondent's sur-reply should be struck. (ECF No. 85.)

In *Aycock*, the special master determined that $1,000.00 was a reasonable hourly rate for Dr. Srikumaran's work in that case. The analysis in *Aycock* has also been accepted by multiple other special masters. *Jensen v. Sec'y of Health & Human Servs.*, No. 18-1458V, 2024 WL 1056145, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2024); *Herron v. Sec'y of Health & Human Servs.*, No. 19-240V, 2024 WL 3042789, at *4 (Fed. Cl. Spec. Mstr. May 24, 2024); *Doe v. Sec'y of Heath & Human Servs.*, No. 20-94V, 2024 WL 3344664, at *5 (Fed. Cl. Spec. Mstr. June 12, 2024). Importantly, however, these decisions have been predicated on Dr. Srikumaran's efficiency and the degree to which his opinion was valuable in resolving the case at issue. *Aycock*, 2023 WL 8869423, at *10 (explaining that "[e]ven though Dr. Srikumaran's hourly rate is higher than what has been paid to date to other experts in the Vaccine Program, he produced a persuasive expert report with supporting medical literature in 4.25 hours, resulting in an overall reasonable fee"); *Jensen*, 2024 WL 1056145, at *2 (agreeing with the *Aycock* analysis as "well-reasoned"); *Herron*, 2024 WL 3042789, at *4 (awarding the requested

---

[3] In fact, while Dr. Srikumaran bills at a stated rate of $1,000.00 per hour, he additionally charged a $2,500.00 retainer. In this case, his total bill was $17,950.00, which reflected the $2,500.00 retainer plus $15,450.00, which represented 15.45 hours of work billed at $1,000.00 per hour. (ECF No. 79-2, p. 11.) Therefore, Dr. Srikumaran's effective hourly rate for this case is actually $1,161.81 per hour. While it is not unusual for experts in the program to charge an initial retainer fee, in my experience experts generally apply the retainer against the hours subsequently billed. Ultimately, as explained below, reasonable expert costs are assessed by multiplying a reasonable hourly rate by a reasonable number of hours expended.

rate because "Dr. Srikumaran is routinely expeditious in time management and a well credentialed expert in his field"); *Doe*, 2024 WL 3344664, at *5 (awarding costs based on Dr. Srikumaran's credentials coupled with the total hours spent to find the "total bill is reasonable").  Thus, some other decisions have declined to endorse Dr. Srikumaran's high hourly rate for all cases, but have nonetheless found that the overall amount sought may be reasonable under given circumstances.  *E.g.*, *Elmakky v. Sec'y of Health & Human Servs.*, No. 17-2032V, 2024 WL 3160506, at *4 (Fed. Cl. Spec. Mstr. May 22, 2024) (declining to set a rate prospectively but noting the overall cost of $6,050.00 was reasonable given that Dr. Srikumaran's report was "invaluable when reaching an appropriate resolution"); *Grossmann v. Sec'y of Health & Human Servs.*, No.18-13V, 2024 WL 706874, at *2 (reducing redundant hours billed by Dr. Srikumaran and finding that the "overall reduced amount is reasonable given the expert's qualifications, the effectiveness of the ultimate work product in resolving this case, and the efficiency with which the reports were produced").

      I have considered the parties' arguments with respect to Dr. Srikumaran's hourly rate in this case.[4]  (ECF Nos. 79-81, 84-85.)  As noted above, petitioner has filed evidence comparable to what was filed in *Aycock*.  (ECF No. 84; Exs. 33-39.)  In particular, petitioner has filed a report by an executive recruiter regarding market rates for orthopedic experts.  (Ex. 36.)  This report indicates that Dr. Srikumaran's stated rate of $1,000.00 per hour is slightly lower than the average rate for a top tier expert in orthopedic surgery.  Hourly rates for case review among orthopedic surgeons range from $100.00 per hour to $2,500.00 per hour, with an overall average of $663.00 per hour and an average for the top 20% of $1,068.00 per hour.  (*Id.* at 4.)  I agree with the *Aycock* analysis in that, as a general matter, Dr. Srikumaran's credentials support his stated rate as a reasonable reflection of the market for the services he renders.  2023 WL 8869423, at *10.  Therefore, the $1,000.00 rate will be appropriate in at least some cases.  However, I also agree with respondent that Dr. Srikumaran's rate, which is substantially higher than what has historically been awarded in this program, warrants scrutiny based on, *inter alia*, the actual work performed in the case.  (ECF No. 82, pp. 3-4.)

---

[4] Petitioner argues that I should strike respondent's sur-reply regarding Dr. Srikumaran's rate as a matter of fundamental fairness.  (ECF No. 85, p. 2.)  Petitioner cites my prior decision in *Lang v. Secretary of Health & Human Services*, in which I addressed a similar sur-reply.  (*Id*. at 3 (quoting No. 17-995V, 2024 WL 706875, at *1 n.2 (Fed. Cl. Spec. Mstr. Jan. 25, 2024).)  In *Lang*, I awarded attorneys' fees and costs without any further proceedings subsequent to respondent's sur-reply.  I explained that this was possible because I awarded costs without specifically reaching the hourly rate requested by petitioner.  I advised in a footnote that "if the outcome of the instant motion were different, respondent's resort to a belated sur-reply to present this issue for the first time would raise questions of fundamental fairness under the vaccine rules that would need to be addressed. (*See* Vaccine Rule 3(b)(2); Vaccine Rule 8; Vaccine Rule 13(a)(3).)" 2024 WL 706875, at *1 n.2.  Here, however, I have provided petitioner a full and fair opportunity to respond to respondent's sur-reply and address Dr. Srikumaran's hourly rate, which she has done. (ECF Nos. 84-85.)  Ordinarily, special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).

As with attorneys' fees, costs associated with expert work in this program are assessed using the lodestar method. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (applying the lodestar approach to the Vaccine Act); *Chevalier v. Sec'y of Health & Human Servs.*, No. 15-01V, 2017 WL 490426 (Fed. Cl. Spec. Mstr. Jan. 11, 2017 (citing *Avera* and applying the lodestar calculation to both attorneys' fees and expert costs). Under that approach, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Avera,* 515 F.3d at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348. As the *Aycock* special master explained, expert hourly rates are based on a number of factors, many of which touch broadly on qualifications and on the market for the relevant expert services, but which also include "the nature, quality, and complexity of the information provided" by the expert, as well as "any other factor likely to be of assistance to the court in balancing the interests" at stake. *Aycock*, 2023 WL 8869423, at * 7 (citing *McClain v. Owens-Corning Fiberglass Corp*., No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)); *see also Wilcox v. Sec'y of Health & Human Servs*., No.90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). Thus, expert hourly rates may be reduced based on case-specific performance. *Frantz v. Sec'y of Health & Human Servs*., 146 Fed. Cl. 137, 146 (1029) (observing that "prior participation in cases before the Office of Special Masters does not create an assumption of credibility or performance when the quality of testimony is substandard. Special masters determine the value of an expert's work on an individual case basis." (internal citation omitted).)

In this case, Dr. Srikumaran's four reports did not demonstrate either the efficiency or effectiveness that he has displayed in other cases. Nor can I conclude that his performance matched that of a top tier expert. As explained in the procedural history of the dismissal decision, I held a Rule 5 conference in this case following the first round of expert reports in part to inform the parties that Dr. Srikumaran (as well as respondent's expert) had not adequately grappled with the central issue in the case, namely whether petitioner's shoulder pain could be distinguished from her diagnosed cervical radiculopathy. (ECF No. 76, p. 4 (quoting ECF No. 46).) Only after prompting, and despite having opined in his first report that petitioner's condition had been limited to her shoulder, Dr. Srikumaran conceded in his second report that petitioner's clinical presentation did encompass a cervical radiculopathy. (Ex. 19, p. 6.) Nonetheless, Dr. Srikumaran persisted in opining that petitioner's presentation remained consistent with a Table SIRVA, even seeking to argue the legal meaning of the Table Injury Qualifications and Aids to Interpretation within his third report. (Ex. 19, p. 6; Ex. 26, p. 1.) He also set forth an opinion based on causation-in-fact. However, as explained in the dismissal decision, petitioner's own clinical history and diagnoses did not actually support application of Dr. Srikumaran's proffered theory. (ECF No. 76, pp. 24-26.) Dr. Srikumaran remained efficient insofar as he produced four reports in less than 16 hours; however, his failure to timely and directly address the central issue prolonged the case and increased the number of reports needed to fully flesh out his view.

In contrast to other cases in which Dr. Srikumaran's unusually high rate has been accepted because he efficiently provided invaluable medical expertise (*e.g.*, *Elmakky*, *supra*), I find that Dr. Srikumaran's four expert reports, while necessary to a full adjudication of the issues in an adversarial context, were less helpful than expected and, if anything, more likely hindered an efficient resolution of this case. In that regard, it should be noted that Dr. Srikumaran's stated rate is very high compared to other experts offering persuasive expert opinions in SIRVA cases within this program. *E.g. Perry v. Sec'y of Health & Human Servs.*, No. 17-1207V, 2022 WL 2800863, at *5 (noting Dr. Bodor's requested rate of $500 per hour is reasonable because of "the role his expert report played in petitioner receiving a favorable outcome via stipulation."); *Turner v. Sec'y of Health & Human Servs.*, No. 17-678V, 2023 WL 2445578, at *3 (reducing Dr. Natanzi's hourly rate from a requested rate of $500 per hour in a case resolved by stipulation). While Dr. Srikumaran's performance in this case was not necessarily substandard overall, it does not warrant a premium. Accordingly, considering Dr. Srikumaran's overall performance in light of all of the above, I will award costs for Dr. Srikumaran's work in this case consistent with what the evidence filed by petitioner indicates is the overall average hourly rate for case review by orthopedic surgeons: $663.00 per hour. Dr. Srikumaran billed 15.45 hours in this case. Accordingly, I award $10,243.35 for his work, a reduction of $7,706.65.

I have also reviewed the remainder of counsel's billing records and requested costs. Apart from Dr. Srikumaran's rate, the request appears reasonable, and I find no cause to reduce the requested hours, rates, or costs.[5] The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 300aa-15(e). Petitioner's motion for attorneys' fees and costs is GRANTED and fees and costs are awarded in a reduced amount.

**Accordingly, the undersigned awards the total of $71,872.85[6] as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Leah V. Durant, Esq.**

---

[5] It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). However, when determining the relevant fee reduction, special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484-85 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests. . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

[6] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, including "advanced costs," as well as fees for legal services rendered. Furthermore, § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including

The clerk of the court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

<u>**s/Daniel Horner**</u>
Daniel Horner
Special Master

---

costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.,* 924 F.2d 1029 (Fed. Cir.1991).

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.